## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

Case No. 9:10-cv-81041

TARA WHYTE; HATTIE WALKER;
GLORIA ROLLE; LEONARD ROLLE;
VALBERT ECCLESTON; CHARLISE
MACK; SHIRLEY JENKINS CAMPBELL;
TYRONE CAMPBELL; SAMANTHA
MCWILLIAMS; STANLEY MCWILLIAMS;
LATORIA KELLY; ALBERT SPENCER; and
FAIR HOUSING CENTER OF THE
GREATER PALM BEACHES, INC.,

           Plaintiffs,

    v.

ALSTON MANAGEMENT, INC.; BIG
LAKE VILLAGES, INC.; CALVIN D.
ALSTON; and MONA L. MILLER,

           Defendants.

## COMPLAINT

Plaintiffs Tara Whyte, Hattie Walker, Gloria Rolle, Leonard Rolle, Valbert Eccleston,

Charlise Mack, Shirley Jenkins Campbell, Tyrone Campbell, Samantha McWilliams, Stanley

McWilliams, Latoria Kelly, Albert Spencer, and the Fair Housing Center of the Greater Palm

Beaches, Inc., bring this action against Defendants Alston Management, Inc., Big Lake Villages,

Inc., Calvin D. Alston, and Mona L. Miller.

## NATURE OF THE ACTION

1.     This is an action for declaratory judgment, preliminary and permanent injunctive

relief, and damages for discrimination on the basis of familial status in the provision of housing.

This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.* and Florida common law.

2.      The individual Plaintiffs are members of six families who were residents of Pelican Lake Village, an apartment complex located in Pahokee, Florida, a small, rural town of approximately 6,000 people in northeastern Palm Beach County, Florida.

3.      In mid-December, 2008, residents of Pelican Lake received a notice, signed by Alston Management owner Calvin D. Alston, stating that the Pelican Lake Village Property had been sold and that "IF YOU HAVE CHILDREN LIVING OR STAYING IN THE APARTMENT UNDER THE AGE OF 18 YEARS OLD, YOU WILL HAVE TO VACATE THE PROPERTY BEFORE JANUARY 1st, 2009."  The notice stated that the park was becoming an "adults only community" and concluded with the statement that "IF YOU REFUSE TO MOVE OR COMPLY WITH THE NEW OWNERS WE WILL EVICT YOU IMMEDIATELY."

4.      The families with children living in Pelican Lake were given less than three weeks, during the Christmas holiday season, to locate alternative housing and move from their homes.  Residents without children were not asked to vacate Pelican Lake and many residents without children living at Pelican Lake in December, 2008 continue to live in their Pelican Lake homes today.

5.      After the notice was distributed, several families with children received phone calls and visits demanding that they leave Pelican Lake immediately.  In response to the notice, calls, and visits from Defendants, all six Plaintiff families as well as other families with children, sought out new housing and moved out of Pelican Lake within a month of being informed that they must vacate the complex.

6.      Defendants' actions in forcing Plaintiffs from their homes in Pelican Lake because they have children violate the federal fair housing act and state common law.  Plaintiffs have been, and continue to be, adversely affected by the acts, policies, and practices of Defendants and/or their agents.

**PARTIES**

7.      Plaintiffs Tara Whyte and Hattie Walker are citizens of the United States and residents of Florida.  Ms. Whyte and Ms. Walker reside at 2319 Shoma Lane in Wellington, Florida.  Ms. Whyte has three minor children, who at the time the family was forced from Pelican Lake, were ages 11, 7, and 2, and who are Ms. Walker's grandchildren.  Ms. Whyte and Ms. Walker resided in Pelican Lake at 501 B Pelican Lake Village from 2002 to 2008.  In December 2008, Ms. Whyte and Ms. Walker received a notice from Defendants stating that all residents with children under the age of 18 were required to vacate Pelican Lake before January 1, 2009.  In response to the notice, the family moved from Pelican Lake Village.  Ms. Whyte and Ms. Walker have been and continue to be adversely affected by the acts, policies, and practices of Defendants, their employees, and/or their agents.

8.      Plaintiffs Gloria Rolle and Leonard Rolle are citizens of the United States and residents of Florida.  The Rolles reside at 430 E 2nd Street, Pahokee, Florida.  The Rolles have four minor children, who at the time the family was forced from Pelican Lake, were ages 17, 15, 14, and 1.  The Rolles lived in Pelican Lake Village at 612 A Pelican Lake Drive from 2006 to 2008.  In December 2008, the Rolles were informed by Defendants that all residents with children under the age of 18 were required to vacate Pelican Lake before January 1, 2009.   In response to the notice, the family moved from Pelican Lake Village.  The Rolles have been and

continue to be adversely affected by the acts, policies, and practices of Defendants, their employees, and/or their agents.

9.      Plaintiffs Valbert Eccleston and Charlise Mack are citizens of the United States and residents of Georgia.  Mr. Eccleston and Ms. Mack reside at 1204 Hale Street, Waynesboro, Georgia.  Mr. Eccleston and Ms. Mack have two minor children, who at the time the family was forced from Pelican Lake, were two-years old and five-months old.   Mr. Eccleston and Ms. Mack lived in Pelican Lake Village from 2005 to 2008 at 409 A Pelican Lake.  In mid-December 2008, Mr. Eccleston and Ms. Mack received a notice from Defendants stating that all residents with children under the age of 18 would have to vacate Pelican Lake before January 1, 2009.   In response to the notice, the family moved from Pelican Lake Village.  Mr. Eccleston and Ms. Mack have been and continue to be adversely affected by the acts, policies, and practices of Defendants, their employees, and/or their agents.

10.      Plaintiffs Shirley Jenkins Campbell and Tyrone Campbell are citizens of the United States and residents of Florida.  The Campbells currently live at 168 Apelgren Court, Pahokee, Florida.  The Campbells have six minor children, who at the time the family was forced from Pelican Lake, were ages 16, 14, 13, 10, 9, and 8.  The Campbells lived in Pelican Lake Village with their children at 411 B Pelican Lake Drive from 2007 to 2008.  In mid-December 2008, the Campbells received a notice from Defendants stating that all residents with children under the age of 18 were required to vacate Pelican Lake before January 1, 2009.  In response to the notice, the family moved from Pelican Lake Village.  The Campbells have been and continue to be adversely affected by the acts, policies, and practices of Defendants, their employees, and/or their agents.

11.     Plaintiffs Stanley McWilliams and Samantha McWilliams are citizens of the United States and residents of Florida.  The McWillaims reside at 209 B Runyon Village in Belle Glade, Florida.  The McWilliams have one child, who at the time the family was forced from Pelican Lake, was age 14.  The McWilliams lived in Pelican Lake Village at 305 B Pelican Village.  Mr. McWilliams was a resident of Pelican Lake Village from 1982 to 2008.  Mrs. McWilliams was a resident of Pelican Lake Village from 1985 to 2008.  In December 2008, the McWilliams received a notice from Defendants stating that all residents with children under the age of 18 were required to vacate Pelican Lake before January 1, 2009.  In response to the notice, the family moved from Pelican Lake Village.  The McWilliams have been and continue to be adversely affected by the acts, policies, and practices of Defendants, their employees, and/or their agents.

12.     Plaintiffs Latoria Kelly and Albert Spencer are citizens of the United States and residents of Florida.  Ms. Kelly and Mr. Spencer currently live at 8740 Glades Drive, Apt 60, Pahokee, Florida.  Ms. Kelly and Mr. Spencer have two minor children, who at the time the family was forced from Pelican Lake, were four-years old and six-months old.  Ms. Kelly and Mr. Spencer lived at Pelican Lake Village at 409 A Pelican Lake from early 2008 until December 2008.  On December 15, 2008, Ms. Kelly and Mr. Spencer received a notice from Defendants stating that all residents with children under the age of 18 were required to vacate Pelican Lake before January 1, 2009.  In response to the notice, Ms. Kelly and Mr. Spencer moved from Pelican Lake Village.  Ms. Kelly and Mr. Spencer have been and continue to be adversely affected by the acts, policies, and practices of Defendants, their employees, and/or their agents.

13.     Plaintiff Fair Housing Center of the Greater Palm Beaches, Inc. (hereinafter "Fair Housing Center") is a non-profit corporation organized under the laws of the State of Florida with its principal place of business at 1300 West Lantana Road, Suite 200, Lantana, Florida 33460.

14.     Plaintiff Fair Housing Center maintains as a primary purpose, the elimination of housing discrimination throughout the Greater Palm Beaches area on the basis of race, color, national origin, religion, sex, familial status, disability, marital status, age, and sexual orientation. The Fair Housing Center seeks the eradication and elimination of direct and indirect obstacles that limit full access to the housing market throughout Florida and seeks to help end unlawful housing discrimination through education, public awareness, and assisting victims enforce their rights.

15.     Plaintiff Fair Housing Center has engaged and continues to engage in a variety of fair housing activities and services throughout the Greater Palm Beaches, including contracting with governmental officials to promote fair housing, training housing providers and local municipalities about anti-discrimination laws, referring constituents to housing opportunities free from discrimination, mediating fair housing issues concerning municipalities, participating and sponsoring fair housing educational programs through workshops and dissemination of anti-discrimination literature, counseling citizens of the Greater Palm Beaches on fair housing rights, and assisting victims enforce their rights guaranteed under the fair housing laws.

16.     Plaintiff Fair Housing Center has been forced to divert its time and resources to identify and counteract Defendants' discriminatory acts, resulting in the expenditure of time and resources that would otherwise have been used to engage in its typical activities to further its fair housing mission.  Defendants' discrimination has further frustrated the Fair Housing Center's

mission of eradicating discrimination; ensuring equal housing opportunities for all; and developing further awareness and knowledge regarding the rights and responsibilities created by the fair housing laws.  Plaintiff Fair Housing Center has been and continues to be adversely affected by the acts, policies, and practices of Defendants, their employees and/or agents.

17.    Defendant Alston Management, Inc. is an apartment management company with its place of business at 380 U.S. Highway 27 North, South Bay, Florida.  At all times relevant to this Complaint, Defendant Alston Management operated and managed the dwelling units in Pelican Lake Villages, located at Pelican Lake Drive, Pahokee, Florida 33476.

18.    Defendant Alston Management, Inc., including by and through its officers, employees, and/or agents, Calvin D. Alston and Mona L. Miller, is responsible for the formulation and implementation of policies, practices, acts, and conduct with respect to the marketing, sales, and rental terms and conditions, as well as all other facets of the management of the Pelican Lake Village apartments.

19.    Defendant Alston Management, Inc., is vicariously liable for the acts and/or omissions of its employees and agents.  At all times relevant to the allegations in this complaint, Defendant Alston Management, Inc., acted through its agents and employees.  Defendant Alston Management retained and supervised employees and/or agents who engaged in the acts complained of herein.

20.    Defendant Big Lake Villages, Inc., is an apartment owner and management company with its place of business at 380 U.S. Highway 27 North, South Bay, Florida.  Upon information and belief, at all times relevant to this Complaint, Defendant Big Lake Villages, Inc. owned, operated, and managed the dwelling units in Pelican Lake Village, located at Pelican

Lake Drive, Pahokee, Florida 33476. Defendant Big Lake Villages, Inc., retained and supervised Defendant Alston Management in regard to Pelican Lake Village.

21.     Defendant Big Lake Village, Inc., including by and through its officers and/or agents, Calvin D. Alston and Mona L. Miller, is responsible for the formulation and implementation of policies, practices, acts, and conduct with respect to marketing, sales, and rental terms and conditions as well as all other facets of the ownership and management of the Pelican Lake Village apartments. Defendant Big Lake retained and supervised employees and/or agents who engaged in the acts complained of herein.

22.     Defendant Calvin D. Alston is a resident of Belle Glade, Florida. Mr. Alston currently resides at 772 Fleming Drive, Belle Glade, Florida. Mr. Alston is an owner, officer, agent, and/or employee of Defendant Alston Management, Inc. and/or otherwise works on behalf of Alston Management, Inc. Mr. Alston is also an owner, officer, agent, and/or employee of Defendant Big Lake Villages, Inc. and/or otherwise works on behalf of Big Lake Villages, Inc. Defendant Alston retained and supervised employees and/or agents who engaged in the acts complained of herein.

23.     Defendant Mona L. Miller is a resident of Belle Glade, Florida. Ms. Miller currently resides at 800 SW 16th Street, Apt. 6, Belle Glade, Florida. Ms. Miller is an owner, officer, agent, and/or employee of Defendant Alston Management, Inc. and/or otherwise works on behalf of Defendant Alston Management, Inc. Ms. Miller is also an owner, officer, agent, and/or employee of Defendant Big Lake Villages, Inc., and/or otherwise works on behalf of Defendant Big Lake Villages, Inc.

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 3613(a), 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, 28 U.S.C. § 2201.  Venue is proper in the Southern District of Florida under 28 U.S.C. §1391 because a substantial portion of the events or omissions giving rise to the claims occurred in Palm Beach County.

## FACTUAL BACKGROUND

**A.     History of Pelican Lake Village**

25.     Pelican Lake Village is an apartment complex located in Pahokee, Florida, a small, rural town of approximately 6,000 people in northeastern Palm Beach County, Florida. The residents of Pahokee are, on average, poor.  The median household income is half the national average and the number of families below the poverty line is nearly double the national average.  A majority of Pahokee residents are minorities.

26.     Pelican Lake Village is one of several apartment complexes owned by Defendant Big Lake Villages Inc. ("Big Lake Villages") and is operated by Defendant Alston Management, Inc. ("Alston Management").  Pelican Lake Village, which has just over one hundred units, has historically been home to migrants who worked the sugar cane fields surrounding the property.

27.     In 2008, upon information and belief, Alston Management, Big Lake Villages and a not-for-profit organization named Matthew 25 began discussions regarding Matthew 25 leasing units at Pelican Lake.  Under the name of the corporation Miracle Parks, Inc., Matthew 25 planned to rent a majority of the apartments at Pelican Lake to former prison inmates, most of whom were sex offenders.

28.     Upon information and belief, on December 1, 2008, Alston Management leased a majority of the units at Pelican Lake to Matthew 25.  By the end of December, upon information and belief, a number of the former prisoners were already living in their new apartments.

**B.     All Pelican Lake Residents with Children Directed to Vacate the Property**

29.     In mid-December, 2008, Pelican Lake tenants received a notice stating that all families with children must vacate the property because Pelican Lake had been sold to Miracle Parks Inc., and was to become an "adults only community."  Most tenants received the notice in mid-December, 2008, approximately two weeks before the eviction deadline.

30.     The notice directed that:  "IF YOU HAVE CHILDREN LIVING OR STAYING IN THE APARTMENT UNDER THE AGE OF 18 YEARS OLD, YOU WILL HAVE TO VACATE THE PROPERTY BEFORE JANUARY 1st, 2009."

31.     The notice further stated that: "IF YOU REFUSE TO MOVE OR COMPLY WITH THE NEW OWNERS WE WILL EVICT YOU IMMEDIATELY."

32.     The notice was signed by Alston Management owner Calvin D. Alston.  Pelican Lake was not, at any relevant time, registered with the State of Florida as housing for older persons.  Pelican Lake does not meet the requirements set forth in Department of Housing and Urban Development regulations for qualifying as housing for older persons.  Upon information and belief, Defendants never intended to operate Pelican Lake as housing for older persons.

**C.     Plaintiffs Forced to Relocate Their Families**

33.     Tara Whyte, Hattie Walker and Whyte's three minor children resided in Pelican Lake at 501 B Pelican Lake Village for approximately seven years.  In September 2008, Ms. Whyte received a call from Defendant Miller asking if she was interested in moving to any of the other developments operated by Alston Management.  When Ms. Whyte said she was not

interested and asked why Miller was inquiring, Miller told her that Pelican Lake might have been sold but refused to give further details.

34.     In the coming months, Whyte started hearing rumors from neighbors that the property had in fact been sold and she contacted Miller.  In this second phone conversation, Defendant Miller denied the property had been sold and promised to tell Ms. Whyte immediately about any changes.  Yet, soon after, Ms. Whyte came home to find on her and Ms. Walker's doorstep the notice directing all families with children to vacate Pelican Lake.

35.     Unable to find alternative housing, Ms. Walker, Ms. Whyte and her children stayed in the apartment at Pelican Lake until after school resumed in January 2009.  On the first day of school after the winter break, Ms. Whyte sent her children to the front of the complex to catch the school bus.  The children waited, but no bus ever arrived.  Ms. Whyte later learned that Pelican Lake management had stopped school bus service to the complex.

36.     In response to the notice and fearing imminent eviction Ms. Whyte sought a new apartment.  With the assistance from the area's Housing Authority, Whyte found an available unit at 2319 Shoma Lane in Wellington, Florida.  After the move, Ms. Whyte's daughter had to change schools and both of her school-age children's schools are now farther from their home. The school bus does not run to Ms. Whyte's new apartment, forcing Ms. Whyte to drive her children to school every day.

37.     The move from Pelican Lake was expensive for Ms. Whyte and her family.  Ms. Whyte used the money she was planning to spend during the holidays to make a deposit on the new apartment and water bill.  It was difficult for the family to enjoy Christmas with their belongings packed into boxes and their energies focused on finding a new place to live.

38.     Gloria Rolle, Leonard Rolle and their four minor children resided in Pelican Lake at 612 A Pelican Lake Drive for approximately three years.  The Rolles enjoyed the safety and quiet of the mostly secluded apartment complex.  With their home somewhat removed from the City, it was easy for the Rolles to keep track of their children while still giving them a degree of freedom to spend time with their friends.

39.     In December 2008, Defendant Miller began coming to the house where she warned the Rolles' children that they had no choice but to move out of Pelican Lake.  During one of these visits, Defendant Miller handed them the notice directing all families with children to vacate Pelican Lake.  Mrs. Rolle called Defendant Miller who confirmed, without giving any justification, that the family would indeed have to relocate.  Defendant Miller told Mrs. Rolle that the family had fifteen days to leave or they would be evicted.

40.     The notice that all families with children were required to vacate Pelican Lake came soon after the Rolles' children were asked by Pelican Lake management to help tear down the neighborhood playground.  The children were told that the old playground was being torn down to make way for a new, improved playground, but in reality, the children were being used to help remove the playground because all of the children were being evicted from the community.

41.     In response to the notice and Defendant Miller's instructions, and fearing imminent eviction, the Rolles began searching for an alternative apartment.  The Rolles found a new apartment at 430 E 2^nd Street, Pahokee, Florida.  The rent at the new apartment is higher than the rent at the Pelican Lake apartment.  The Rolles were forced to make a $2,250 deposit for the apartment and a $325 deposit for the water bill.  The truck they used to move cost an additional $250.

42.     At the time the family received the notice, Mr. Rolle was working in Texas as a disaster inspector.  Mr. Rolle has been employed for twenty-five years helping communities around the country recover from natural disasters.  In order to help his family move, Mr. Rolle was forced to stop working and drive 1,200 miles back to Pahokee.

43.     Mr. Rolle stayed in Pahokee to help with the move to their new apartment. Because disaster relief work comes in cycles associated with each disaster, Mr. Rolle was unable to return to his Texas project and did not return to work for approximately four months.

44.     To add to the financial burden of the eviction, the downtown location of their new apartment causes the Rolles to worry about the safety of their children.  Instead of spending time after school in the quiet, confined area of Pelican Lake, their teenage children now meet their friends in town, where their parents cannot easily supervise their activities.

45.     Valbert Eccleston, Charlise Mack and their two minor children resided in Pelican Lake at 503 A Pelican Lake Drive.  Ms. Mack was a lifelong resident of Pelican Lake before being forced out of her home.  Ms. Mack was born and raised at Pelican Lake and moved into her own apartment in the complex when she left her mother's home.  Mr. Eccleston moved into a Pelican Lake apartment with his father after they came to the United States from Jamaica fifteen years earlier and had been living in the community ever since.  Ms. Mack and Mr. Eccleston saw Pelican Lake as a family-orientated community that was a good home for their children.

46.     In early December, Mr. Eccleston and Ms. Mack paid their rent in person to Defendant Miller who mentioned nothing about any pending changes at Pelican Lake.  However, as Ms. Mack began to hear from her neighbors about the potential eviction of all tenants with children, she and Mr. Eccleston called Alston Management.

47.     Defendant Miller confirmed that all families with children would be required to move.  Soon after, the family received the notice instructing all families with children to vacate Pelican Lake.  Ms. Mack spent the Christmas holiday worrying about where she and her family would be living in the coming year.

48.     In response to the notice and the instructions of Alston Management and fearing imminent eviction, Ms. Mack began searching for a new apartment for her family.  Ms. Mack found an available unit at the Runyon Village apartment complex.  Ms. Mack and Mr. Eccleston would have preferred to look around for the best apartment for their children, but with the eviction deadline quickly approaching they felt they had no choice but to move to Runyon Village.

49.     The apartment in Runyon Village did not have heat.  During the cold season, the family used the oven to keep the apartment warm.  The front door had no door knob and the landlord was unresponsive in correcting the problem.  The apartment had no bathtub and Ms. Mack was forced to bathe her children in a mini tub.  Ms. Mack and Mr. Eccleston's daughter could not take the bus to school from their Runyon Village apartment in Belle Glade and Ms. Mack had no choice but to drive her child to school every morning in Pahokee before returning to Belle Glade to start her own job.

50.     While living at Pelican Lake, Ms. Mack was attending a basic recruit training course to become a certified correction officer.  Because she was unable to study due to the time spent and the stress during the family's relocation, Mack failed an important exam and was removed from the training program and discharged from her job.

51.     Escaping the many problems with their Runyon Village apartment, Ms. Mack and Mr. Eccleston moved in April 2009 to Waynesboro, Georgia.

14

52.     Shirley Jenkins Campbell, Tyrone Campbell and their six minor children resided in Pelican Lake at 411 B Pelican Lake Drive for two years.  The Campbells liked living at Pelican Lake because it was a safe place to raise their children.  The neighborhood is somewhat removed from the center of town and they didn't have to worry about letting their young children play outside.  Most of the residents of Pelican Lake knew each other and the Campbells enjoyed the sense of community fostered by the size and location of the apartment complex.

53.     In February, 2008, Mrs. Campbell and her family began hearing rumors that current residents were going to be forced to leave.  People who appeared to be working on behalf of Pelican Lake management began coming to the Campbells' home during the day while Mr. and Mrs. Campbell were away at work and repeatedly told the Campbells' children that they needed to move out of Pelican Lake.  Mrs. Campbell called Alston Management and spoke with Defendant Miller who told her only that she would be receiving a letter explaining any changes.  On December 11, 2008, the Campbells received the notice instructing all families with children to vacate Pelican Lake.

54.     After receiving the notice and in the weeks leading up to the eviction deadline, Mrs. Campbell and her family were repeatedly harassed by individuals who appeared to be working on behalf of Pelican Lake management about vacating the property.

55.     In response to the notice and fearing imminent eviction, the Campbells began seeking an alternative home.  Mrs. Campbell had trouble finding a new apartment and was rejected at least once.  The Campbells eventually found a new home and on December 29, 2008, moved their family to 8717 Doveland Drive.  The sudden and stressful change was extremely difficult for the Campbells and their six children.  Mr. Campbell was forced to work overtime at his job with Ranger Construction Company to help come up with the money to pay for moving

expenses.  Although they ultimately succeeded in finding a new home for the family, the Campbells were forced to leave behind their family dog, an experience which was unbearable for the children and caused the Campbells additional distress.  The Doveland Drive home was further from both Campbells' work.

56.     Stanley McWilliams, Samantha McWilliams and their daughter resided in Pelican Lake at 305 B Pelican Village.  Mr. McWilliams had been a Pelican Lake resident since he was eighteen.  Mrs. McWilliams had been a resident of Pelican Lake twenty-four years.

57.     In December 2008, Mrs. McWilliams was at home when individuals who appeared to be working on behalf of Pelican Lake management came to her doorstep and handed her the notice directing all families with children to vacate Pelican Lake.  They notified her that the family had fifteen days to move from the complex.  When Mr. McWilliams learned about the notice, he went to speak with Defendant Miller but she refused to provide him with any additional details about the notice to vacate.

58.     On December 29, 2008, the McWilliams family relocated to 209 B Runyon Village in Belle Glade, Florida.  The McWilliams had not wanted to move to Runyon Village, but they were concerned about losing their security deposit if they chose a new apartment not owned and operated by Defendants.

59.     The McWilliams now pay more rent than their rent at Pelican Lake.  The new apartment is small and cramped and there is not enough room to fit everyone's belongings. Management at Runyon Village has been slow to respond to the myriad of problems with the apartment.  The roof leaked and months passed before repairs were completed.  Complaints about leaks from the toilet and the water heater also received slow and inadequate attention, even

after the entire apartment flooded.  When the air conditioning unit broke down, management refused to purchase a new unit and Mr. McWilliams was forced to make the purchase himself.

60.     The McWilliams' daughter still attends school in Pahokee but because the school bus does not stop at their apartment, Mrs. McWilliams has to drive her daughter to school every day.  The move also lengthened Mr. McWilliams' commute.

61.     Latoria Kelly, Albert Spencer and their two minor children resided in Pelican Lake at 409 A Pelican Lake for seven months.  On December 15, 2008, Ms. Kelly and Mr. Spencer received the notice directing all families with children to vacate Pelican Lake.  From the receipt of the notice to the day the family moved, Ms. Kelly and Mr. Spencer were harassed repeatedly by individuals appearing to represent Pelican Lake management about moving out as soon as possible.  Up until their departure, these individuals were coming to Ms. Kelly and Mr. Spencer's home every single day to ask when the family planned to vacate the apartment.  In response to the notice and the constant harassment, Ms. Kelly and her family were among the first to leave Pelican Lake.

62.     Through a family member, Ms. Kelly was able to locate alternative housing for her family.  The rent at Ms. Kelly and Mr. Spencer's new apartment is higher than the rent they paid at Pelican Lake.  They were also required to pay a deposit of $300 on the apartment.  These extra costs were particularly difficult because Ms. Kelly and Mr. Spencer did not receive their security deposit back for their Pelican Lake apartment.  Unlike their home in Pelican Lake, the new apartment has no yard.

63.     In January, 2009, a local Congressman called the Fair Housing Center to seek assistance for the families with children being displaced at Pelican Lake.  The Fair Housing Center also received a call from one of the families who had been forced from Pelican Lake

asking for assistance from the organization.  In response, the Fair Housing Center opened an investigation.  Representatives of the Fair Housing Center engaged in a variety of activities to assist the displaced residents, including speaking with the Pahokee Housing Authority regarding adequate alternative housing for displaced Pelican Lake residents and counseling the former Pelican Lake residents regarding the protections and requirements of the fair housing laws.  The Fair Housing Center also contacted representatives of Defendants regarding the actions they were taking against families with children at Pelican Lake.  In an effort to determine the nature and extent of Defendants' discrimination, the Fair Housing Center investigated the discriminatory conduct and what persons and entities engaged in the illegal actions.

64.     In response to the displacement of families with children at Pelican Lake, the Fair Housing Center began an education and outreach plan to residents of Pahokee and the surrounding area in an effort to provide information regarding the fair housing obligations of housing providers and the fair housing rights of tenants.  The Fair Housing Center focused its efforts on the areas served by apartment complexes owned or managed by Defendants.  The Fair Housing Center made presentations to local organizations and distributed flyers throughout the community.  The Fair Housing Center's education and outreach campaign was designed to counteract the harmful effects of the Defendants' discrimination.

## INJURIES TO PLAINTIFFS

65.     Defendants, acting individually and in concert with others, directly and through their agents, maintain a policy and have engaged in a pattern of discrimination on the basis of familial status.  Defendants have pursued this policy and pattern for the purpose and/or with the effect of preventing families with children from residing at Pelican Lake.

66.     As a result of Defendants' unlawful actions described above, the individual Plaintiffs have suffered, continue to suffer, and will in the future suffer, great and irreparable loss and injury, including, but not limited to emotional distress, humiliation, and embarrassment, and a deprivation of their right to equal housing opportunities. All six Plaintiff families experienced significant hardship when faced with Defendants' sudden and unexpected requirement that they vacate Pelican Lake.

67.     As a result of Defendants' unlawful actions described above, the individual Plaintiffs have suffered, continue to suffer, and will in the future suffer economic damages.

68.     Defendants' unlawful actions, as described above, have frustrated the Fair Housing Center of the Greater Palm Beaches, Inc.'s mission of promoting fair housing and non-discrimination in housing throughout the greater Palm Beaches region.  The Fair Housing Center has made substantial efforts and expended considerable resources to ensure equal housing opportunities without regard to familial status in its service area.  Defendants' discriminatory practices have impeded the Fair Housing's efforts to ensure equal housing opportunities without regard to familial status.

69.     Defendants' unlawful actions have forced the Fair Housing Center to divert its resources from its typical activities, which include a range of educational, testing, investigative, counseling, and referral services throughout the greater Palm Beaches area.

70.     Instead of engaging in these usual activities, the Fair Housing Center has been forced to identify and counteract Defendants' discriminatory practices by, among other activities: investigating Defendants' discrimination; interviewing residents of Pelican Lake; gathering additional information; and conducting outreach workshops to educate the community regarding

the requirements of the Fair Housing Act as it relates to familial status discrimination and housing for older persons and regarding Defendants' illegal conduct.

71.     The Fair Housing Center has devoted time, resources, and money toward efforts to educate the public and raise community awareness regarding discrimination in housing based on familial status in an effort to offset the effect of Defendants' unlawful practices and actions and refusal to change those unlawful practices and actions.

72.     The Fair Housing Center had planned to implement various projects and initiatives in and around the spring of 2009.  The time and resources diverted to investigate and counteract Defendants' discrimination contributed to a delay in implementing those projects and initiatives.

73.     Defendants' unlawful actions described above were, and are, intentional and willful, and/or have been and are implemented with callous and reckless disregard for the statutorily protected rights of Plaintiffs, entitling Plaintiffs to punitive damages.

74.     Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern, practice or policy of discrimination described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now suffering and will continue to suffer irreparable injury from Defendants' acts and their policies, pattern, and practice of discrimination unless relief is provided by this Court.

**FIRST CAUSE OF ACTION**
Fair Housing Act, 42 U.S.C. § 3601, *et seq*.

75.     Plaintiffs repeat and incorporate by reference all allegations contained in Paragraphs 1 through 74 as if fully set forth herein and further allege as follows:

76.     Defendants' acts, including those through their employees and/or agents, as described herein, violate the Fair Housing Act, as amended, 42 U.S.C. §§ 3604(a), (b), (c) and (d).

       (a)     Defendants' acts, including those through their employees and/or agents, as described herein, constitute a refusal to rent housing and otherwise make housing unavailable on the basis of familial status in violation of 42 U.S.C. § 3604(a);

       (b)     Defendants' acts, including those through their employees and/or agents, as described herein, provided different terms, conditions, and privileges of rental of housing, as well as different services and facilities in connection therewith, on the basis of familial status in violation of 42 U.S.C. § 3604(b);

       (c)     Defendants' statements, including those made by their employees and/or agents, as described herein, expressed a preference on the basis of familial status in violation of 42 U.S.C. § 3604(c).

       (d)     Defendants' acts, including those made by their employees and/or agents, as described herein, misrepresented the availability of rental housing on the basis of basis of familial status in violation 42 U.S.C. § 3604(d).

## SECOND CAUSE OF ACTION
Negligent Retention

77.     Plaintiffs repeat and incorporate by reference all allegations contained in Paragraphs 1 through 76 as if fully set forth herein and further allege as follows:

78.     Defendants' acts, including those through their employees and/or agents, as described herein, violate Florida common law against the negligent retention of an employee or

agent.  Defendants negligently retained employees and/or agents who discriminated against Plaintiffs.

79.     Defendants received actual or constructive knowledge of their employees and/or agents' propensity for discriminating against families with children by their employees and/or agents' repeated written and verbal demands that all families with children, including Plaintiffs, vacate Pelican Lake.

80.     Defendants learned of or should have learned of their employees and/or agents' discrimination against families with children.  Pelican Lake tenants with children, including Plaintiffs, and Defendants' employees and/or agents communicated as a direct result of their employment and/or agency with Defendants.  Defendants derived potential benefits from their employees and/or agents' communications with Pelican Lake tenants with children including Plaintiffs.

81.     Upon receiving actual or constructive notice of Defendants' employees and/or agents' unfitness, Defendants owed a duty to Plaintiffs to take appropriate corrective action, such as investigating their employees and/or agents', discharging them or reassigning them so that they would no longer come in contact with or otherwise communicate with the Plaintiffs. Defendants breached their duty by failing to investigate their employees and/or agents or take any appropriate corrective action to prevent them from further discriminating against Plaintiffs.

82.     Defendants' breach of their duty proximately caused injuries to Plaintiffs.

**THIRD CAUSE OF ACTION**
Negligent Supervision

83.     Plaintiffs repeat and incorporate by reference all allegations contained in Paragraphs 1 through 82 as if fully set forth herein and further allege as follows:

84.     Defendants' acts, including those through their employees and agents, as described herein, violate Florida common law against the negligent supervision of an employee or agent.  Defendants negligently supervised employees and/or agents who discriminated against Plaintiffs.

85.     Defendants' employees and/or agents had a privilege to and did repeatedly enter onto the leased premises owned by Defendants and occupied by Plaintiffs and communicated with Plaintiffs for the purpose of requiring Plaintiffs to vacate the property because they lived with their minor children.

86.     Defendants knew or had reason to know that they had the ability to control their agents and/or employees who discriminated against Plaintiffs.  Defendants knew or should have known of the necessity and opportunity for exercising control over their agents and/or employees who discriminated against Plaintiffs.

87.     Defendants owed a duty to Plaintiffs to exercise reasonable care to control their agents and/or employees and prevent them from intentionally harming Plaintiffs or from creating an unreasonable risk of injury to Plaintiffs.  Defendants breached their duty by failing to exercise reasonable care to control their agents and/or employees and prevent them from discriminating against Plaintiffs.

88.     Defendants' breach of their duty proximately caused injuries to Plaintiffs.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), the Plaintiffs demand a trial by jury of all issues so triable as of right.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant them the following relief:

(1)     enter a declaratory judgment finding that the foregoing actions of Defendants violate the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 *et seq*. and Florida common law;

(2)     enter a preliminary injunction directing Defendants and their directors, officers, agents and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(3)     enter a permanent injunction directing Defendants and their directors, officers, agents and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(4)     award compensatory damages to the individual Plaintiffs in an amount to be determined by the jury that would fully compensate Plaintiffs for the economic loss, humiliation, embarrassment and emotional distress that has been caused by the conduct of the Defendants alleged herein;

(5)     award Plaintiff Fair Housing Center compensatory damages, in an amount to be determined at trial, to fully compensate it for its diversion of resources, frustration of mission, and other damages it has suffered as a result of Defendants' actions described above;

(6)     award Plaintiffs punitive damages in an amount to be determined at trial that would punish Defendants for their intentional, malicious, willful, callous, wanton, and reckless disregard for Plaintiffs' rights, and would effectively deter Defendants from engaging in similar conduct in the future;

(6)     award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

3613(c)(2); and

(7)     order such other relief as this Court deems just and equitable.

Dated: September 3, 2010

/s/ James P. Curry
James P. Curry
Bar No. 10346
CURRY PL
601 Heritage Drive, Suite 203A
Jupiter, FL 33458-2777
(561) 578-4685
james.curry@currypl.com

/s/ Reed N. Colfax
Reed N. Colfax, *application for pro
hac vice to be filed*
RELMAN, DANE & COLFAX PLLC
1225 Nineteenth Street, Suite 600
Washington, DC 20036
(202) 728-1888
rcolfax@relmanlaw.com

*Attorneys for Plaintiffs*