UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-81041-CIV-DIMITROULEAS/Snow

TARA WHYTE *et al.*

    Plaintiffs,

vs.

ALSTON MANAGEMENT, INC. *et al.*,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AGAINST ALSTON MANAGEMENT, INC., BIG LAKE VILLAGES, INC. AND MONA MILLER

THIS CAUSE is before the Court upon Plaintiffs' Motion for Summary Judgment [DE 80] filed against Defendants Alston Management, Inc., Big Lake Villages, Inc., and Mona Miller[1] on September 16, 2011.  The Court has carefully considered the Motion, Defendants' Response in Opposition [DE 85], Plaintiffs' Reply [DE 87], and other documents on file with the Court appropriately considered on a motion for summary judgment, and is otherwise fully advised in the premises.  The Court notes that Plaintiffs Valbert Eccleston, Charlise Mack, and Mildred Chery have not joined in this motion due to factual disputes regarding their claims.[2] *See* [DE 80 at 1 n.1]. _____

_____

[1] Though there are other defendants in this action, for the purpose of this Order, "Defendants" will refer only to Alston Management, Inc., Big Lake Villages, Inc., and Mona Miller.

[2] For convenience, the Court will use the shorthand term "Plaintiffs" in this Order to refer to all plaintiffs except Eccleston, Mack, and Chery.

## I. SUMMARY JUDGMENT STANDARD

In a summary judgment motion, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party has come forward to meet the initial burden of showing that there is no genuine issue of material fact to be decided by trial, the burden shifts to the nonmoving party to demonstrate that there is a material issue of fact at trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). The party opposing a motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings, but rather must go beyond the pleadings to show specific facts demonstrating that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

## II. FACTUAL ALLEGATIONS

Plaintiffs' allege that Defendants are liable for violations of the Fair Housing Act of 1968, 42 U.S.C. § 3601 *et seq.*, because a rental manager, Mona Miller, threatened to evict several families from the Pelican Lake Village apartment complex due to their familial status. Defendant Big Lake Villages, Inc. owns Pelican Lake Village. *See* [C. Alston Dep., DE 84-8 at 48:13-14]. Defendant Alston Management, Inc. managed the apartments. *See id.* at 9:1-21. Calvin Alston is the President of both Alston Management and Big Lake Villages. *Id.* at 7:2-17. On December 1, 2008, Big Lake Villages leased all Pelican Lake Village units to Matthew 25 Ministries, Inc., subject to the existing residents' leases. *See* [DE 84-5].

On or about December 11, 2008, Mona Miller sent a notice (the "Notice") to residents of Pelican Lake Village stating "WE HAVE SOLD OUR PELICAN LAKE VILLAGE PROPERTY

TO: MIRACLE PARKS INC. ADULTS ONLY COMMUNITY. IF YOU HAVE CHILDREN LIVING OR STAYING IN THE APARTMENT UNDER THE AGE OF 18 YEARS OLD, YOU WILL HAVE TO VACATE THE PROPERTY BEFORE JANUARY 1ST, 2009.... IF YOU REFUSE TO MOVE OR COMPLY WITH THE NEW OWNERS WE WILL EVICT YOU IMMEDIATELY." *See* [DE 84-1]. The Notice was written by Mona Miller in the Alston Management office. *See* [M. Miller Dep., DE 84-18 at 80:13-81:4]; [DE 84 at 3 ¶ 15].[3] The Notice bore Calvin Alston's signature, though Calvin Alston states that Miller signed the document with Alston's name without his permission to do so. *See* [C. Alston Dep. II, DE 87-28 at 32:10-33:12].

    Miller wrote the Notice in order to get residents with children to move from Pelican Lake Village and she understood that tenants would read the Notice to mean that Alston Management would evict tenants with children who refused to move. *See id.* at 82:3-15, 87:2-12. The households of Plaintiffs Tara Whyte, Hattie Walker, Gloria Rolle, Leonard Rolle, Shirley Jenkins Campbell, Tyrone Campbell, Miretha McWilliams, Stanley McWilliams, Latoria Kelly, and Albert Spencer all received this Notice and moved at least in part due to it. *See* [T. Whyte Dep., DE 84-25 at 37:4-16]; [G. Rolle Dep., DE 84-20 at 6:3-7:19, 25:13-26:5]; [S. Campbell Dep., DE 84-10 at 33:5-9]; [S. McWilliams Dep., DE 84-17 at 19:8-15]; [L. Kelly Dep., DE 84-14 at 34:22-25]. Plaintiff Fair Housing Center of the Greater Palm Beaches ("Fair Housing Center") also was injured by the Notice because it diverted its resources to assist victims of Defendants'

---

[3] Factual assertions in the statement of undisputed facts are deemed admitted or undisputed if not properly addressed in the response. See Fed. R. Civ. P. 56(e); S.D. Fla. L.R. 7.5(d). Though Miller's deposition states that she wrote the notice in the "office," Plaintiffs' statement of facts clarifies that it was in Alston Management's office, and Defendants do not deny that clarification.

housing discrimination, investigated Defendants' conduct, and attempted to counteract the impact of Defendants' discrimination.  *See* [DE 82 at 8 ¶¶ 47, 49-50]; [V. Larkins Aff., DE 84-3 ¶¶ 13-15]; *Cent. Ala. Fair Hous. Ctr., Inc.* v. *Lowder Realty Co.,* 236 F.3d 629, 642 (11th Cir. 2000) ("When a fair housing organization expends resources as a proximate result of the defendant's discriminatory conduct, and those resources would have been devoted to other activities consonant with its mission were it not for the offending conduct, it suffers injury independent of that suffered by individuals in the affected housing market.").

Though there is a factual dispute between Plaintiffs and Defendants as to Miller's status as an employee, this Court finds that it is immaterial. Plaintiffs argue that Miller was an employee of Alston Management and an officer of Alston Management and Big Lake Villages. *See* [M. Miller Dep., DE 84-18 at 10:16-20, 28:2-6, 19-20, 29:20-30:5]. Defendants assert that neither Big Lake Villages nor Alston Management had employees, and only Calvin Alston had authority to make decisions for Big Lake Villages.  *See* [C. Alston Dep., DE 85-2 at 36; DE 85:3 at 48:1-4; DE 85-5 at 21:17-21].  Defendants concede, however, that Alston Management leased employees from TriNet Corporation and that Miller was one such employee.  *See* [DE 85-5; DE 85-6]; *see also* [DE 85 at 3 ¶ 10].  TriNet had no supervisory responsibility over Miller; that responsibility was handled by Calvin Alston and Alston Management. [C. Alston Dep. II, DE 87-28  at 33:33:19-34:20].  Calvin Alston disciplined Miller.  *See* [C. Alston Dep. II, DE 87-28 at 32:17-22].      It is also undisputed that Miller had served as Alston Management's property manager for several years.  *See* [DE 87-27 at 159:18-161:20]. Thus, though there is a dispute as to whether Miller was actually an "employee" or just a "leased employee," there is no genuine dispute of material fact that Miller had acted as Alston Management's property managing agent

for several years and continued to do so through the events giving rise to the present lawsuit.

The parties also disagree as to the extent of Miller's authority, but this dispute is likewise immaterial. Defendants argue that Miller did not have authority to sign notices going to residents, *see* [M. Miller Dep., DE 85-13 at 97:15-21], and was specifically instructed only to inform residents of Matthew 25 Ministries' assumption of management duties orally, *see* [C. Alston Dep., DE 85-14 at 112:16-22]. Plaintiffs refute these factual allegations. Plaintiffs argue that Miller managed Alston Management's rental properties at Pelican Lake Village by answering phones, collecting rent, and writing letters. *See* [M. Miller Dep., DE 84-18 at 12:21-24, 22:14-20]. Plaintiffs point to Calvin Alston's deposition testimony that Miller had the authority to start the eviction process and that Miller could direct an Alston Management employee to distribute eviction notices. *See* [C. Alston Dep., DE 84-8 at 57-58]. In that deposition, Calvin Alston also stated that Miller had the authority in general to send out any notices that went out, even if not told by Alston to send the notice. *See* [C. Alston Dep., DE 84-8 at 98-99]; *see also* [C. Alston Dep. II, DE 87-28 at 33:1-8 ("[Miller] commonly sends notices to tenants that I did not clear, that was her job. I didn't want to have to look at everything she sent out.")]. Calvin Alston also told Miller to "just help [Matthew 25 Ministries] as much as you can" as they took over of management at Pelican Lake Village. *See* [M. Miller Dep., DE 84-18 at 96:3-14].

Though there are disputes on the periphery of Miller's authority, there is no dispute that Miller had the authority to send out notices in general. Defendants merely raise arguments about whether she could *sign* those notices and whether Miller was prohibited from sending this Notice. As discussed later, the Court finds Miller's actual authority to sign notices immaterial

because of the doctrine of apparent authority. Plaintiffs do not argue that Calvin Alston *actually* signed the Notice; instead, they argue that Alston Management is liable under the doctrine of vicarious liability. Likewise, the dispute about whether Miller was forbidden to notify tenants in writing is also immaterial, because as will also be discussed later, a principal can be liable for the actions of its agent, even if the agent's actions are forbidden. Thus, there is no genuine dispute of material fact as to this issue, so summary judgment is not precluded.

Finally, Defendants attempt to raise a factual dispute about whether Big Lake Villages and/or Alston Management had any duties toward Pelican Lake Apartment after Big Lake Villages leased the apartments to Matthew 25 Ministries on December 1, 2008, but the Court finds this argument unsupported by the record. Defendant alleges that the lease agreement contained a provision that Matthew 25 Ministries would assume all management duties. Though the lease does state that Matthew 25 Ministries would exercise "sole dominion and control over the premises," [DE 85-7 § 9], and that Matthew 25 Ministries would be solely responsible for paying wages of employees employed at Pelican Lake Village, *id.* § 6(f), paying certain taxes, *id.* at § 8, and making most repairs, *id.* § 10, not all management duties were in fact delegated. For example, Big Lake Villages still had the obligation to make certain kinds of repairs, *id.* § 10(a), pay real and personal property taxes, *id.* § 8(c), and could disapprove certain uses of the property, *id.* § 6(a); *see also* [DE 85-9 at 55:7-14 (Calvin Alston stated that Alston Management employees did not have duties related to Pelican Lake Village subsequent to the lease, but immediately qualified that statement by listing duties as to waste water, water, roads, and roofing**.**)

Further, it is undisputed that Miller was still Alston Management's agent after the lease

started with Matthew 25 Ministries and was carrying out Alston Management's instructions in helping transfer management. For instance, Defendant's statement of facts state that "Miller was instructed by Alston Management to only verbally inform the residents of Pelican Lakes of Matthew 25 taking over management of the property." *See* [DE 85 at 4 ¶ 15 (citing C. Alston Dep., DE 85-14 at 112:16-22) ("Q: Did you ever have a conversation with Ms. Miller about sending out a written notice to Pelican Lake Village tenants about the fact that Matthew 25 *was now* leasing the property? A: No, because I had instructed her to tell everybody in person when they came in to pay their rent.") (emphasis added)]; *see also* [M. Miller Dep., DE 84-18 at 96:1-14 (stating that Calvin Alston told Miller to "help [Matthew 25 Ministries] as much as you can" in order to transfer management)]. It is also clear that Alston Management collected rent in December. [M. Miller Dep., DE 84-18 at 100:8-10]; [C. Alston Dep. DE 87-27 at 70:10-21]. Finally, though Calvin Alston first stated that Alston Management no longer managed Pelican Lake Village after leasing it to Matthew 25 Ministries, he clarified that Alston Management still "does but only to the extent that it's leased to Matthew 25 Ministries so there's not much management involved." *See* [C. Alston Dep., DE 84-8 at 9:11-21]. Thus, though Defendants assert that Alston Management had no management duties at Pelican Lake Village after December 1, 2008, that allegation is unsupported by the record and there is no genuine dispute of material fact precluding summary judgment on this account, either.

### III. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs move for summary judgment against Defendants for violating three provisions of the Fair Housing Act, 42 U.S.C. § 3604(a), (b), and (c). These subsections protect individuals from certain forms of discrimination on the basis of "familial status," which is defined as having

one or more children under 18 years of age living with a parent or legal guardian. *See* 42 U.S.C. § 3602(k)(1).  Each will be addressed in turn.

1.  *§ 3604(a): Making Housing Unavailable Due to Familial Status*

Plaintiffs argue that Defendants have violated 42 U.S.C. § 3604(a) by making dwellings unavailable to the tenants of Pelican Lake Village on the basis of familial status. Section 3604(a) states that it is unlawful to "to refuse to sell or rent, ... or otherwise make unavailable or deny, a dwelling to any person because of ... familial status." The threat of eviction is covered by this subsection.  *See* 42 U.S.C. § 3602(i)(2) (defining an "aggrieved person" under the Fair Housing Act to include an individual that believes he or she "will be injured by a discriminatory housing practice that is about to occur"); 24 C.F.R. § 100.60(b)(5) (stating that an eviction would violate § 3604(a)); *cf. Wells v. Willow Lake Estates, Inc.*, 390 F. App'x 956, 959 (11th Cir. 2010) (unpublished) (finding that the threat of eviction was sufficient to confer standing for suit over a violation of a related subsection, § 3604(b)); *Cousins v. Bray*, 297 F. Supp. 2d 1027, 1038 (S.D. Ohio 2003) (granting preliminary injunction for alleged violation of § 3604(a) due to threatened eviction).

A.  Liability of Mona Miller under § 3604(a)

Defendants do not dispute any of Plaintiffs' factual allegations that Miller drafted the Notice.  Miller notified the residents with children, "IF YOU HAVE CHILDREN LIVING OR STAYING IN THE APARTMENT UNDER THE AGE OF 18 YEARS OLD, YOU WILL HAVE TO VACATE THE PROPERTY BEFORE JANUARY 1ST, 2009.... IF YOU REFUSE TO MOVE OR COMPLY WITH THE NEW OWNERS WE WILL EVICT YOU IMMEDIATELY."  This statement is a clear violation of the Fair Housing Act as a threat to evict

based on familial status. *See White v. HUD*, 475 F.3d 898, 905 (7th Cir. 2007) (finding that the statement "she can't rent to you because you have a husband and two children" violates the Act). There is no genuine issue of material fact about whether Miller threatened to evict residents based on their familial status, so Plaintiffs are entitled to summary judgment as a matter of law against Defendant Miller for violating § 3604(a).

B.      Liability of Alston Management under § 3604(a)

In determining whether Alston Management is liable for Miller's actions, this Court looks to traditional vicarious liability principles. The Supreme Court unanimously ruled that common law vicarious liability rules create liability against an entity for its employee's or agent's violations of the Fair Housing Act. *See Meyer v. Holley*, 537 U.S. 280, 282, 291 (2003). This "common law" comes from federal court decisions, rather than any particular state's law. *Id.* at 291 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754-755 (1998)). "The principal is liable for the acts and negligence of the agent in the course of his employment, although he did not authorize or did not know of the acts complained of." *New Orleans, M., & C.R. Co. v. Hanning*, 82 U.S. (15 Wall.) 649, 657 (1873). The law imposes liability when the "employee's purpose, however misguided, is wholly or in part to further the master's business." *Burlington*, 524 U.S. at 756 (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Law of Torts § 70 (5th ed. 1984)). An act can be within the scope of employment even if forbidden by the employer. *Id.* (citing Restatement (Second) of Agency §§ 228(1)(c), 230).

In this case, Miller attempted to follow Alston Management's direction to help Matthew 25 Ministries take over the management of Pelican Lake Apartments. Sending notices to tenants and evicting tenants were both duties that were in the course of her business. While it is not

disputed in the record that Calvin Alston told Miller to orally notify the tenants of the change in management, whether Miller violated Alston's instruction by sending out the Notice does not take Miller's act outside the scope of her employment. The act furthered Alston Management's purpose of transferring management, even if done in a misguided, forbidden way. Therefore, the Court finds that Alston Management is vicariously liable for Miller's discriminatory Notice because it was sent in the course of her employment.

Even if it were outside the scope of employment, a master can still be liable for a servant's conduct in at least two ways. First, the master may be liable if the servant violated a non-delegable duty. *Burlington*, 524 U.S. at 758 (citing Restatement (Second) of Agency § 219(2)(c)). Second, the master can be liable if the "servant purported to act or speak on behalf of the principal and there was reliance upon apparent authority," so long as the victim's belief in the authority to act was reasonable *Id.* at 758-59 (citing Restatement (Second) of Agency § 219(2)(d)). Apparent authority exists when an agent exercises a power he or she does not have. *Id.* at 759.

Alston Management could not delegate its duty to avoid discriminating under the Fair Housing Act. *See Meyer*, 537 U.S. at 290 (noting cases where a principal had a non-delegable duty under the Act, though stating that a corporation's officers or shareholders usually do not); *see also Marr v. Rife*, 503 F.2d 735, 741 (6th Cir. 1974) ("The discriminatory conduct of an apartment manager or rental agent is, as a general rule, attributable to the owner and property manager of the apartment complex, both under the doctrine of *respondeat superior* and because the duty to obey the law is non-delegable."); *United States v. L & H Land Corp.*, 407 F. Supp. 576, 580 (S.D. Fla. 1976). Thus, even if Miller acted outside the scope of her duty, Alston

Management would still be responsible for the violation of § 3604(a) because the duty that section imposes is non-delegable.

Moreover, even if Miller acted beyond the scope of her authority, she acted with apparent authority. She purported to act on behalf of Alston Management by inserting Alston Management's name at the top of the Notice, and by signing the name of its president, Calvin Alston. It was reasonable for residents at Pelican Lake Village to rely on the authority of the Notice, so Alston Management would also be liable for Miller's conduct under a theory of apparent authority.

C.     Liability of Big Lake Villages under § 3604(a)

As stated above, an owner of property has a non-delegable duty to not violate the Fair Housing Act. *See also Walker v. Crigler*, 976 F.2d 900, 904 (4th Cir. 1992) ("the duty of a property owner not to discriminate in the leasing or sale of that property is non-delegable"); *Coates v. Bechtel*, 811 F.2d 1045, 1051 (7th Cir. 1987); *Phiffer v. Proud Parrot Motor Hotel*, 648 F.2d 548, 552 (9th Cir.1980). While in each of the foregoing cases, the property owner retained a flesh-and-blood individual agent who discriminated as opposed to the situation here where Big Lake Villages hired a management corporation whose agent caused the discrimination, the Court does not find that Big Lake Villages insulated itself from its non-delegable duty. A corporation, as a legal creation, can only act through its agents. *E.g. Liquidation Comm'n of Banco Int'l, S.A. v. Renta*, 530 F.3d 1339, 1355 (2008). When Big Lake Villages retained a corporation to manage its properties, it knew that corporation would have to use agents to carry out the management. As a result, this case is analogous to the cited cases where an owner directly retained the discriminating agent. Because Big Lake Villages as an owner of property has a non-

delegable duty to not discriminate under the Fair Housing Act, it is liable under § 3604(a) when the agent of its management corporation violates that Act.

2.     *§3604(b): Discrimination in Terms, Conditions, or Privileges of Rental*

Plaintiffs also allege that Defendants violated 42 U.S.C. § 3604(b). That subsection prohibits discrimination in the "terms, conditions, or privileges of ... rental ... because of familial status." Section 3604(b) covers threatened evictions. *See Wells*, 390 F. App'x at 959; *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1263-65 (11th Cir. 2002) (finding a violation of § 3604(b) for an eviction). For the same reasons articulated above under § 3604(a), the Court finds that Defendants are liable for violating § 3604(b) because Miller threatened to evict tenants based on familial status. Alston Management is liable either under a theory of vicarious liability, non-delegable duty, or apparent authority. Big Lake Villages is liable under a theory of non-delegable duty.

3.     *§ 3604(c): Unlawful Statements and Notices Made Indicating Limitation or Discrimination Due to Familial Status*

Finally, Plaintiffs argue that they are entitled to summary judgment against Defendants for a violation of 42 U.S.C. § 3604(c). Under § 3604(c), it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice [or] statement with respect to the ... rental of a dwelling that indicates any preference, limitation, or discrimination based on ... familial status, or an intention to make any such preference, limitation, or discrimination." Miller's Notice falls well within this definition. The Notice explicitly indicates discrimination based on familial status. As described in the previous two sections, Miller is liable for printing a notice that indicates discrimination based on familial status, Alston Management is liable either

under a theory of vicarious liability, non-delegable duty, or apparent authority, and Big Lake Villages is liable under a theory of non-delegable duty.

## IV. CONCLUSION

Plaintiffs have demonstrated that there are no genuine disputes of material facts as to whether Defendants are liable for violations of 42 U.S.C. § 3604(a)-(c). The factual controversies raised by the Defendants are immaterial or unsupported by the record. The Court finds that Plaintiffs are entitled to judgment as a matter of law.

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs Tara Whyte, Hattie Walker, Gloria Rolle, Leonard Rolle, Shirley Jenkins Campbell, Tyrone Campbell, Miretha McWilliams, Stanley McWilliams, Latoria Kelly, Albert Spencer, and Fair Housing Center of the Greater Palm Beaches, Inc.'s Motion for Summary Judgment [DE 80] against Defendants Alston Management, Inc., Big Lake Villages, Inc., and Mona Miller is **GRANTED**. Because Valbert Eccleston, Charlise Mack, and Mildred Chery did not join in this motion, this Order does not grant a summary judgment in their favor.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 1st day of November, 2011.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provided to:

Counsel of Record